### 6650

### TUCKER v. ATLANTIC COAST LUMBER CO.

1. ALIEN—REAL PROPERTY—SPECIFIC PERFORMANCE.—The assignee, a
   citizen of this State, of an alien may enforce in the Courts of this
   State the specific performance of a contract to convey more than
   five hundred acres of land.
2. REHEARING refused.

Before HYDRICK, J., Berkeley, April, 1906.   Affirmed.

Action by R. P. Tucker against Atlantic Coast Lumber
Co.  ·The Circuit decree is:

"This is an action for the specific performance of a con-
tract for the sale of real estate.

"The defense is rested mainly upon two grounds:

"*First:* That the contract was without consideration, ex-
cept the mutual covenants therein contained, and that it was
abandoned by Jantunen, with whom it was made, who, it is
alleged, refused, soon after its execution, to comply with its
terms.

"*Second:* That it is void because it is in contravention of
the Statute limiting the amount of land which an alien may
own or control.

"The contract is under seal, which imports a considera-
tion.   Besides, the mutual covenants therein contained are
· sufficient to support it.   The testimony fails to support the
defense that the contract was abandoned by Jantunen.   He
could not have done so without the consent of the defendant,
and there is no testimony that the defendant consented to his
doing so.

"The second ground raises a very interesting and novel
point.   Jantunen was an alien, and the contract was for the
conveyance of more than ·500 acres of land.

"It has been the policy of this State, as indeed, of all

the States, to deal liberally with aliens in regard to their ownership of land. The statutes on the subject have always been liberally construed in their favor.

"At the common law an alien's title was good against the world until 'office found.' The State has the exclusive right to question the alien's birth, and right to the possession of land to which he had acquired title. I know of no instance in the history of judicial proceedings in this State, where a direct proceeding was instituted on the part of the State to escheat the lands of an alien owner in possession. It was only when an alien had to appeal to the law to acquire title, or get possession, that he was denied the aid of the Courts. That doctrine rests upon the principle, that the law will not with one hand invest him with property and with the other divest him of it. *Nil frusta agit lex.* Hence the rule that an alien can acquire title to, and possession of, real property in any of the modes by which a citizen can, except by act and operation of law. While he cannot go into court and invoke the aid of the law to get title or possession, he can, if brought into court, defend them against all claimants, except the State. *Jenny* v. *Laurens,* 1 Spear, 365.

"The effect of the Act of 1872 was to abrogate the common law, as to the ownership of property by aliens, and the effect of the act of 1896 was practically to restore the common law as to the ownership or control of more than 500 acres of land by an alien. Therefore, I do not agree with plaintiff that Jantunen himself could have gone into court and enforced this contract. That being so, does his assignee occupy a better position than he did?

"While the general rule is that contracts in contravention of a public statute are void, yet there are numerous exceptions, and the Courts will look to the statute itself, the objects and purposes for which it was enacted, in order to ascertain, in the language of Lord Ellenborough, 'the true sense and intention of the legislature.' *Harris* v. *Runnels,* 12 How. (U. S.), 80. In *Richards* v. *McDaniels,* 2 Mill,

22, Judge Johnson quotes Noy with approval in saying, general laws and special laws, the old law and the new law, the laws of God and the laws of man, are oftentimes all joined together for the purposes of helping a man to his rights. The policy of the law is clearly to prohibit the ownership or control of more than 500 acres of land by an alien. The contract here under consideration is executory or somewhat in the nature of an option. It does not give the alien ownership of the land, not even the equitable title, nor does it give him control of it. By its terms he has only the right, but for his alienage, to acquire the ownership and control of it, and to do so, notwithstanding his alienage by the voluntary act of the defendant. He not only had those rights, but, by the express terms of the contract, the right also to substitute another in his place by assignment, which he has done. As the contract itself does not give him the ownership or control of the land, it was not in contravention of the statute. I think, therefore, Jantunen had the right to make and assign the contract, and that his assignee can enforce it. The contract was made in good faith, and if defendant had voluntarily performed it, Jantunen's title would have been good against the world, until 'office found,' and he could have made valid conveyance of it, or any part of it, and the title of his grantee would have been good. A conveyance from an alien is not a defective link in a chain of title. *Groves* v. *Gordon,* 3 Brev., 245.

"If he could have made a valid conveyance of the land, *a fortiori,* he could of a contract for the purchase of the land.

"The case of *Meeks* v. *Richbourgh,* 1 Mill, 412, is relied on by defendant in support of a contrary view. The conclusion in that case is sustained by the rule that an alien cannot invoke the aid of the court to acquire title or get possession of land, but the doctrine announced in the opinion that a grant to an alien is absolutely void, is contrary to the great weight of authority elsewhere, and at variance with later cases in this State, and must be considered as over-

ruled by them. The same learned Judge who wrote the opinion in *Meeks* v. *Richborough* holds a different view in the later case of *Groves* v. *Gordon,* 3 Brev., 245. It also appears from the review of the authorities, cited by the learned Judge in *Meeks* v. *Richbourgh,* by Mr. Justice Johnson, in *Governeur* v. *Robertson,* 11 Wheat, 332, that the citation from Blackstone was misinterpreted, or that Blackstone himself was not sustained by the authorities which he cited.

"There are other reasons why the Court would be slow to hold the rights of an alien under the contract in question, or his title to more than 500 acres of land, or his conveyance thereof to another, absolutely void. Suppose an alien should purchase a tract, supposed to contain 500 acres, pay his money for it, take titles, and thereafter convey to another, would the purchaser's deed be void, if it should afterwards be ascertained that the tract actually contained 600 acres?

"Again, it is well known that we have amongst us many persons of foreign birth who have been naturalized, while many others, though having lived in the State for many years, have not been naturalized. Are the citizens of the State to deal with the latter class, as to real estate, or interests therein acquired by them, at their peril? It seems to me that such a rule would be too dangerous to rights acquired for value and in good faith. This contract is sought to be enforced by one who took it in good faith, and whose right to enforce it does not conflict with any law or policy of the State. The question is whether the Court will withhold its aid from one who, at the time a contract is sought to be enforced is the owner of it and capable, by law, of taking under it, when the contract itself is neither immoral nor illegal, nor contrary to public policy. If Jantunen himself had become naturalized after making the contract, he could have invoked the aid of the Court to enforce it. In *Jenny* v. *Laurens,* Robert Jenny, who had acquired title to real estate while an alien, was allowed after his naturalization, to bring suit and recover it. The Court says: "The

plaintiff, Robert Jenny, is now a naturalized citizen, and is under no impediment to sue.' While it is true that naturalization will not have relation back or retroactive effect to divert vested rights (as held in *Vaux* v. *Nesbit,* and other cases), still it may have such relation back to confirm rights acquired as an alien. *Asterman* v. *Baldwin,* 6 Wall. (U. S.), 122; *Governeur* v. *Robertson,* 11 Wheat. (U. S.), 322. These authorities sustain the view that the question is one of ability to enforce the contract at the time it is sought to be enforced by the person who seeks to enforce it.

"I do not think there is any force in the point made by the defendant that the contract was made subject to the approval of the board of directors, as it has not been shown that it was ever approved by them. The answer of the defendant admits the execution of the contract by the defendant. This would be sufficient, but there are circumstances to warrant the inference that it was approved by the directors. When the plaintiff made formal demand on the defendant that it perform the contract, the defendant refused on the sole ground that Jantunen had abandoned it.

"The plaintiff contends that the defendant is estopped from pleading the alienage of Jantunen. I do not think the doctrine of estoppel would prevent the defendant from setting up the defense that the contract was void, because in contravention of law or public policy.

"It is therefore, ordered, adjudged and decreed that the plaintiff is entitled to the specific performance by the defendant of the contract made and entered into by and between the defendant and Antii Jantunen, of date January 27th, 1904, set out as an exhibit to the complaint, and that the defendant do specifically perform the same, upon the compliance of the plaintiff on his part, with the terms thereof, and, further, that both parties have the right to apply at the foot of this decree for such further orders as may be necessary or proper in the premises."

From this decree, defendant appeals.

*Messrs. Wilcox & Wilcox, LeGrand G. Walker* and *Henry E. Davis* for appellant, cite: *What was the common law with respect to aliens?* 2 Cyc., 90-96; 1 McC. Ch., 351; 1 Strob., 522; 1 Speer, 356; 2 McM., 300; 1 N. & M., 292; 3 Brev., 29; DeS., 13, 106; 1 Strob. Eq., 299; 7 Rich. 87; 11 Wheat., 332; 3 Brev., 245. *An alien cannot enforce an executory contract to convey more than 500 acres of lands:* Con., art. III, sec. 35; Code 1902, 1795; 51 Am. St. R., 184; 91 U. S., 72; 52 Am. St. R., 611; 93 Am. St. R., 437; 96 Am. St. R., 756; 7 Crunch, 620; 23 Ency., 435, 437; 9 Wheat., 191; 12 Wheat., 438; 40 L. R. A., 430; 1 S. C., 152; 20 S. C., 437; 9 Cyc., 475; 56 Am. St. R., 214; 46 Am. St. R., 855; 13 Am. St. R., 292. *Nor can the assignee of an alien enforce such contract:* 20 S. C., 439; 6 Wait Act. & Def., 466; 1 Speer, 365; 28 A. M. Dec., 413; 1 Wash. Real Prop., 74; 33 Am. Dec., 548; 3 McC., 52; 5 Strob., 126; 1 Rich. Eq., 49; 4 Rich. Eq., 113; 2 S. C., 244; 20 S. C., 281; 3 S. C., 138; 57 S. C., 480; 68 S. C., 248; 2 Speer, 193; 43 S. C., 287; 45 S. C., 83; 49 S. C., 469; 96 Am. Dec., 153; 7 Wheat, 545; 25 Am. Dec., 348; 14 Pet., 131; 3 Wash. on Real. Prop., 260; 7 Cranch, 620. *Distinction between alien in possession and alien endeavoring to get possession:* 5 Thomp. on Corp., secs. 5772-5, 5795-99, 5800; 98 U. S., 621; 133 U. S., 21; 10 Cyc., 1135; 100 A. M. Dec., 369. *Must the illegality of the contract be determined according to the personnel of the litigant at commencement of suit?* 2 Kent. Com., 60; 5 Stat., 546; 34 At. R., 520. *Defendant is not estopped from pleading invalidity of contract:* 70 Am. St. R., 165; 75 A. M. St. R. 774; 46 Am. St. R., 2446.

*Messrs. B. A. Hagood, W. A. Holman, Mitchell & Smith, contra. Mr. Holman* cites: *There is no law in this State against an alien taking an option:* Con., art. III, sec. 35; Code 1902, 1795. *Defendant is estopped from raising invalidity of contract:* 3. Brev. 245.

*Mr. Smith* cites : *Can the assignee of an alien enforce a contract for a specific conveyance of land?* Con., art. III, sec. 35; 22 Stat., 211; Code 1902, 2360; 3 Brev., 245; 1 Speer, 356; 1 Strob., 552; 1 McC., 352; Dud. Eq., 212; 132 U. S., 282; 152 U. S., 505; 11 Wheat., 332; 183 U. S., 563; 152 U. S., 505; 1 Mill., 412. *Defendant is estopped from pleading Jantunen was an alien:* 23 S. C., 190.

*Mr. Hagood* cites : *"Office found" defined:* 11 Ency., 104. *Ability of alien to hold lands:* Act 27 Feb., 1872, 19 Nov. 1873; 23 Stat. 715; Act 9 March, 1896; 1 Mc. Ch., 352; 1 Speer, 356; 1 Strob., 552; 7 Cranch, 603; 3 Wheat., 594; 1 Feam Con. R., 111; 11 Wheat, 382. *No one can complain except State:* 6 Wall., 116; 20 How., 8; 100 U. S., 208; 152 U. S., 511; 2 Cal., 558; 1 App. D. C., 430. *Defendant is estopped from setting up Jantunen's alienage:* 23 S. C., 190; sec. 1795, Code 1902. *It is in violation of treaty rights:* U. S. Stat., 442; 100 U. S., 483; 2 Wheat., 259.

The opinion in this case was filed July 11, but remittitur held up on petition for rehearing until

September 10, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The facts of this case are set out in the decree of his Honor, the Circuit Judge, which is affirmed for the reasons therein stated.

We, however, desire to correct an error (which does not affect the result) wherein the Circuit Judge states that the case of *Groves* v. *Gordon,* 3 Brev., 245, is later than the case of *Meeks* v. *Richborough,* 1 Mill, 412. The decision in the former was rendered in 1812, while the latter was not filed till 1817.

MR. JUSTICE WOODS, *concurring.* Whatever possible doubt the courts of this State may have left as to the validity of titles to land or contracts concerning land

derived by citizens from aliens before office found is settled by the statute law of the State.

The Constitution, art. III, sec. 35, provides: "It shall be the duty of the General Assembly to enact laws limiting the number of acres of land which any alien or corporation controlled by aliens may own in this State."

In carrying out this mandate of the Constitution, the General Assembly passed the following statute as section 1795 of Civil Code: "No alien or corporation controlled by aliens, either in his or its own right, or as trustees, *cestui que trust* or agent, shall own or control, within the limits of this State, more than five hundred acres of land: *Provided,* This section shall not apply to land purchased under proceedings either by action or power of sale, to foreclose any mortgage hereafter acquired by any alien or corporation controlled by aliens, purchasing the same, but in such case such alien or corporation controlled by aliens, shall not be entitled to hold such excess of land more than five years, without sale of same, unless the Comptroller General shall certify that a sale during that time would be detrimental to the interest of such alien or corporation controlled by aliens, in which case the said alien or corporation controlled by aliens may hold the land for five years longer upon the same condition. Nothing in this section shall apply to lands already owned or controlled by the persons or corporations referred to in this section nor to lands already mortgaged to such persons or corporations."

Before the adoption of the constitutional provision of 1895, and before the enactment of the statute just quoted, the law of the State on this subject was embodied in the statute enacted in 1872, which provided: "That real and personal property, of every description, may be taken, acquired, held and disposed of by an alien, in the same manner, and in all respects, as by a natural born citizen; and a title to real and personal property of every description may be derived through, from, or in succession to an alien, in

the same manner, in all respects as through, from, or in succession to a natural born citizen.".

In the Code of 1902, containing section 1795, above quoted, the act of 1872 was re-enacted as section 2360, in the following words, the only change from the original statute being the insertion of the words we have placed in brackets: "Real and personal property of every description may be taken, acquired, held, and disposed of by an alien, [subject to the provisions of section 1795] in the same manner, in all respects, as by a natural born citizen; and a title to real and personal property of every description may be derived through, from, or in succession to an alien, in the same manner, in all respects, as through, from or in succession to a natural born citizen." Unless in conflict with the Constitution, both sections 1795 and 2360 must be given full effect.

The Constitution and section 1795 of Civil Code taken together cannot be held to mean anything more than that the State may take from an alien any land held by him in excess of five hundred acres, and that the courts will not aid an alien to recover more than five hundred acres. The provision of section 2360, that title to real and personal property of any description may be derived from or through an alien, therefore, is not inconsistent with the Constitution, or with section 1795, and must be given full effect. For this reason, in addition to those stated in the Circuit decree, the judgment should be affirmed.

Sept. 10, 1907. PER CURIAM. After a careful consideration of the petition herein, the Court is satisfied that no material question of law or of fact has either been overlooked or disregarded:

It is therefore ordered that the petition for rehearing be dismissed, and that the order heretofore granted staying the remittitur be revoked.